**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| GADDIE EYE CENTER, LLC,<br>A Kentucky Limited Liability Company,<br>7635 Shelbyville Road<br>Louisville, KY 40222<br><br>And<br><br>DR. IAN BENJAMIN GADDIE, O.D.<br>7635 Shelbyville Road<br>Louisville, KY 40222<br><br>        Plaintiffs,<br><br>        v.<br><br>VISION SERVICE PLAN INSURANCE CO.,<br>A California Corporation,<br><br>   **Serve via Secretary of State:**<br>   Stuart Little Thompson, Registered Agent<br>   3333 Quality Drive<br>   Rancho Cordova, CA 95670<br><br>        Defendant. | **Electronically filed**<br><br>Case No.:   3:17-cv-701-CRS |

**VERIFIED COMPLAINT**

Plaintiffs, Dr. Ian Benjamin Gaddie ("**DR. GADDIE**") and Gaddie Eye Centers, LLC ("**GEC**"), for their Complaint against Vision Service Plan ("**VISION**"), state as follows:

1.      Plaintiffs bring this action seeking a temporary restraining order, preliminary and permanent injunctive relief, and monetary damages against VISION. This case arises from VISION's unlawful efforts to terminate VISION's network doctor agreement ("**NDA**") with DR. GADDIE and GEC in violation of Kentucky law. VISION

has threatened to terminate the NDA effective November 30, 2017.  If timely injunctive relief is not granted to Plaintiffs, each Plaintiff, as well as their patients, will suffer immediate and irreparable injuries.

## JURISDICTION, PARTIES, AND VENUE

2. Plaintiff GEC is a Kentucky limited liability company with its principal place of business in Louisville, Kentucky.  GEC is a citizen of Kentucky, and has as its sole member, DR. GADDIE, who is also a citizen of Kentucky.  GEC offers comprehensive eye care and optical services as well as medical and surgical management of eye diseases at four locations in Kentucky including 7635 Shelbyville Rd, Louisville, Kentucky 40222; 9850 Von Allmen Court, Louisville, Kentucky, 40241; 1917 S Hwy 53, LaGrange, Kentucky, 40031; and 2555 Highway 227, Carrollton, Kentucky, 41008.  *See* **Exhibit A**, Dr. Gaddie Declaration.

3. Plaintiff DR. GADDIE is a duly licensed optometrist who provides comprehensive eye care and optical services as well as medical and surgical management of eye diseases to patients in Kentucky.

4. Defendant VISION is a California Corporation with its principal place of business in Rancho Cordova, California, and can be served with process by serving its agent Stuart Little Thompson at 3333 Quality Drive, Rancho Cordova, California, 95670. VISION is a citizen of California, and offers, administrates, and/or underwrites vision insurance plans in every State in the nation, including Kentucky where it transacts substantial business and is registered as an insurance company.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because, as alleged above, GEC, member and co-Plaintiff, DR. GADDIE, are citizens of Kentucky while VISION is a citizen of California with its principal place of business in California. The amount in controversy is well in excess of $75,000, exclusive of costs and interest.

6. Venue is proper in the Western District of Kentucky under 28 U.S.C. §1391 because a substantial portion of the events giving rise to this cause of action occurred in the Western District of Kentucky wherein all Plaintiffs reside, wherein VISION provides insurance plans and conducts substantial business, and wherein the NDA was entered into.

## FACTUAL BACKGROUND

7. VISION was established in 1955, and provides and/or administrates or underwrites vision care plans, thereby acting as an insurance company under Kentucky law. VISION contracts with business, government agencies, other health care insurers, and other organizations to provide primary vision care coverage to these entities' employees, insureds, and dependents. A number of large Kentucky entities contract with VISION to provide vision care benefits.

8. VISION also contracts with optometrists to provide vision care services for patients covered by VISION Insurance via the NDAs. VISION NDA contracted doctors ("**Vision Doctors**") such as DR. GADDIE, provide diagnostic, treatment, and dispensing services to VISION patients.

3

9. VISION is the largest vision care benefits provider in the world, and does business in all fifty states and the District of Columbia. VISION advertises it has a 38,000 VISION Doctor network which constitutes approximately 89% of all eye care providers ("**ECPs**") in the United States. VISION also advertises that it insures approximately 80 million lives, which is approximately 60% of the managed vision care market.

10. ECPs have little choice but to become VISION Doctors given the dominant position and market power VISION holds in the industry. If ECPs do not become VISION Doctors then they are not advertised as "in-network" providers, and are forced to attempt to do business with VISION patients in an out-of-network capacity, which most VISION patients are loathe to do. Should an ECP refuse to execute VISION's NDA, the ECP would effectively forego access to VISION's 80 million insured lives.

11. GEC saw 4,509 VISION patients in 2016, with this accounting for approximately 28% of its total patients. [Declaration of DR. GADDIE attached as **Exhibit A**]. If GEC loses access to these patients, the doctor patient relationship will be damaged with these 4,509 patients, plus thousands more VISION patients GEC will not see in the future. As a result, GEC and DR. GADDIE will suffer unquantifiable damages, and the general public in the Commonwealth of Kentucky will be harmed due to VISION's violation of several Kentucky statutes as described below.

12. The VISION NDA contains a provision called the Ownership and Control Policy ("**OC Policy**") found in Section (B)(1)(a) and (B)(1)(b), a policy that purports to grant to VISION the power to terminate NDAs with VISION Doctors who choose to do

business with "Retail-Commercial Chains" or "Franchise vision care entities". Because of a confidentiality requirement in the NDA, Plaintiffs are seeking to file their NDA pursuant to a protective order. See **Exhibit B**.

13. VISION is aware that the OC Policy violates Kentucky's Any Willing Provider statute, as the Western District of Kentucky previously enjoined VISION from further employing the OC Policy in the Commonwealth of Kentucky against Dr. Mark Lynn via a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction in Dr. Mark Lynn and Assoc. v. VISION, 2005 WL 2739160 (W.D. Ky.) See **Exhibit C**.

14. Kentucky's Any Willing Provider statute codified in part at KRS 304.17C-050 prohibits vision care plans (and any other health insurance plans) from removing providers from plan membership unless removal is based upon "relevant, objective standards" that are "reasonably related to services provided".

15. KRS 304.17C-020 expressly states:

> A health insurer shall not discriminate against any provider who is located within the geographic coverage area of the limited health benefit plan and who is willing to meet the terms and conditions for participation established by the insurer.

16. On or about August 1, 2017, GEC entered into an agreement whereby VisionCare Partners Management, Inc. *d/b/a* Total Eye Care Partners ("**TECP**") became the business manager of GEC. Pursuant to that agreement, GEC and DR. GADDIE retain complete control and absolute ownership of the optometric practice and dispensary. Plaintiffs GEC and DR. GADDIE make all decisions regarding the vision care provided to their patients.

17. TECP provides management services, administrative employees, furniture, fixtures, and equipment in return for a fee.

18. Despite the fact that DR. GADDIE and GEC retain absolute control and ownership of the optometric practice pursuant to its agreement with TECP, and despite the fact that VISION was already enjoined from employing the OC Policy against a VISION Doctor in Kentucky under precisely these same circumstances, VISION issued a termination notice to DR. GADDIE and GEC on August 31, 2017, with the proffered reason for termination as DR. GADDIE and GEC's suspected violation of the OC Policy. ["Termination Letter" attached **Exhibit D**].

19. As soon as Plaintiffs received the Termination Letter, they began attempting to negotiate with VISION. Only in the last few weeks has it become apparent that VISION will not relent and that resorting to judicial processes is necessary.

20. The Termination Letter indicates that, "If you have sold the stock or assets of a Practice listed with VISION and have not notified VISION of this change of ownership and/or the change of operation and control, VISION hereby provides you a 90 day period to cure your breach of the NDA". This "cure" that VISION requests is of course DR. GADDIE and GEC's termination of the business management agreement between GEC and TECP, a lawful business agreement.

21. The Termination Letter is merely the latest incarnation of VISION's unlawful use of the OC Policy to exercise its market power over the eye care industry. VISION uses the OC Policy to keep the ECP industry fragmented, thereby perpetuating

VISION's ability to refuse to raise reimbursements and to continue to force its VISION Doctors to buy eye care products sold by VISION's portfolio companies Marchon, Altair, Eyefinity, Acuity Logic, and Unity.

22. VISION has in fact offered to exempt DR. GADDIE and GEC from the OC Policy and permit his use of VISION'S trademark Marchon series *if* DR. GADDIE and GEC agree to purchasing egregious and punitive levels of eyeglass frames from VISION's wholly owned Altair and Marchon frame companies, as well as egregious and punitive levels of VISION's Unity ophthalmic lenses, all of which employ various VISION trademarks to distinguish their products. VISION also demanded that GEC change its point of sale software and electronic health records software and purchase Eyefinity or Acuity Logic, software owned by VISION. DR. GADDIE and GEC's refusal to agree to extortionate levels of spending with VISION's wholly owned portfolio companies is the real reason that DR. GADDIE and GEC received the Termination Letter. This action constitutes unlawful termination.

23. Since receipt of the notice in question, Dr. Gaddie and GEC have repeatedly attempted to negotiate a resolution of this matter with VISION pointing out that VISION had already lost this issue in previous litigation with Dr. Mark Lynn. VISION, however, has refused to relent and has continued to assert that Dr. Gaddie and GEC's NDA will terminate on November 30, 2017.

24. The amount of money GEC spends with VISION's portfolio companies is not a "relevant, objective standard" that is "reasonably related to [optometric] services",

the standard required by KRS 304.17C-050 for provider termination from an insurance network.

25. VISION is required to grant GEC and DR. GADDIE an administrative hearing under the Fair Hearing provision found in Section (D)(11)(a) before terminating DR. GADDIE or GEC from the VISION network. VISION violated GEC and DR. GADDIE's rights under the NDA when it sent the Termination Letter to DR. GADDIE and GEC informing the Plaintiffs the NDA would be terminated on November 30, 2017 without a Fair Hearing.

26. The Fair Hearing and Arbitration clauses found in Section D(11) of the NDA are procedurally and substantively unconscionable and constitute a contract of adhesion. The Arbitration Clause is unenforceable under KRS 417.050(2).

27. Importantly, VISION has not claimed at any time throughout the nearly twenty years that it has maintained a NDA with DR. GADDIE that DR. GADDIE or GEC has breached any standards of professional care for patients, that DR. GADDIE or GEC has failed to meet professional standards including licensure and credentialing, that DR. GADDIE or GEC have received significant patient complaints, that DR. GADDIE or GEC produced poor clinical results, or that DR. GADDIE or GEC have violated malpractice laws. [See DR. GADDIE Declaration, **Exhibit A**].

**COUNT I
BREACH OF CONTRACT
VIOLATION OF KRS 304.17C-020 and KRS 367.170**

28. Plaintiffs re-incorporate and re-allege the allegations in Paragraphs 1-27 as if fully set forth herein.

29. Adherence to laws, rules and regulations of the Commonwealth adopted pursuant to its police powers, is an implied condition of every contract.

30. Kentucky has exercised its police power by passing KRS 304.17C-020 and related statutes, the Any Willing Provider statute, to prevent insurance companies from enacting policies that refuse providers access to insurance networks based on arbitrary reasons, including preventing insurance companies from attempting to exert control over providers' business relationships. KRS 304.17C-020 prevents VISION from removing VISION Doctors from the VISION network due to doctors' business relationships because the statute only allows the removal of providers from a network for reasons relevant to the provision of eye care.

31. KRS 304.17C-020 expressly states:

> A health insurer shall not discriminate against any provider who is located within the geographic coverage area of the limited health benefit plan and who is willing to meet the terms and conditions for participation established by the insurer.

32. The "terms and conditions for participation established by the insurer" the provider must be willing to meet are strictly limited by KRS 304.17C-050 and KRS 304.17C-080, and relate only to standards and practices related to eye care.

33. KRS 304.17C-050 prohibits insurers such as VISION from avoiding the effect of KRS 304.17C-020 through pretextual application of disingenuous terms or standards in their review of provider retention, expressly stating:

> Standards for providers – Mechanism for acting upon applications
> -Policy governing removal of providers from network.
> (1) Insurers "shall establish relevant, objective standards for initial consideration of providers and for providers to continue as a participating

provider in the plan. *Standards shall be reasonably related to services provided.*

34. GEC's business relationship with TECP has absolutely no bearing whatsoever on clinical outcomes, patient complaints, malpractice claims, licensure, certification, hospital privileges, or any "services provided" by optometrists, nor does VISION allege that it does.

35. VISION's use of the OC Policy against DR. GADDIE and GEC is nothing more than a naked restraint of trade in the wholesale eyeglass and related business in Kentucky, and unlawfully discriminates against DR. GADDIE and GEC in violation of Kentucky law, the public policy of the Commonwealth of Kentucky, and constitutes a breach of contract which has irreparably damaged Plaintiffs in a manner that monetary compensation cannot adequately address. *See* KRS 367.170.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH

36. Plaintiffs re-incorporate and re-allege the allegations in Paragraphs 1-35 as if fully set forth herein.

37. Kentucky law imposes upon each party to a contract a duty of good faith and fair dealing in its performance and its enforcement. VISION has violated this duty by attempting to coerce GEC and DR. GADDIE into punitively high levels of purchases of VISION portfolio company products in order to retain VISION network status.

38. VISION is fully aware that KRS 304.17C-020 prevents the removal of DR. GADDIE and GEC under these circumstances, as VISION currently has an active, court ordered injunction enjoining VISION from use of the OC Policy in Kentucky. Although

the active permanent injunction was limited to only the parties in the above referenced *Lynn* case, the Western District issued judicial orders on a temporary restraining order and a preliminary injunction against VISION's continued use of the OC Policy in Kentucky, putting VISION on notice that the OC Policy violated Kentucky law. *See* **Exhibit A**.

39. VISION's continued attempted utilization of the OC Policy against DR. GADDIE and GEC is fraudulent and in bad faith, and has caused damages to the Plaintiffs that monetary compensation cannot adequately address.

**COUNT III**
**VIOLATION OF KRS 365.050**
**UNFAIR TRADE PRACTICES**

40. Plaintiffs re-incorporate and re-allege by reference the allegations in Paragraphs 1 through 39 as if fully set forth herein.

41. Pursuant to KRS 365.050, secretly extending to certain purchasers special services and privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor, and where such payment tends to destroy competition, constitutes an unfair trade practice.

42. VISION's NDAs contain confidentiality provisions in Sections B(12)(a) and C(2).

43. VISION has secretly extended special services and privileges to other VISION Doctors in the form of allowing said VISION Doctors to retain their VISION network status despite violating the OC Policy.

44. VISION's behavior tends to destroy competition and constitutes an unfair trade practice, which has harmed GEC and DR. GADDIE and caused the Plaintiffs damages that monetary compensation cannot adequately address.

## COUNT IV
## VIOLATION OF KRS 365.832(1)

45. Plaintiffs re-incorporate and re-allege by reference the allegations in Paragraphs 1 through 44 as if fully set forth herein.

46. Pursuant to KRS 365.832(1), no supplier shall coerce any retailer to accept delivery of inventory which the retailer has not ordered voluntarily.

47. VISION has threatened DR. GADDIE and GEC with removal from the VISION network unless DR. GADDIE and GEC purchase a punitively high amount of frames from VISION's Altair and Marchon portfolio companies, and VISION's Unity ophthalmic lenses.

48. VISION is aware that KRS 304.17C-020 prevents VISION from removing VISION Doctors from the VISION network under the OC Policy, and is currently under an active limited permanent injunction enjoining the OC Policy issued by the Western District of Kentucky in 2005.

49. DR. GADDIE and GEC do not want to order these lens and frames from VISION. VISION is aware of this fact, yet has unlawfully threatened to remove DR. GADDIE and GEC from the VISION network unless DR. GADDIE and GEC make these inventory purchases, causing damages to DR. GADDIE and GEC that monetary compensation cannot adequately address.

## COUNT V
## VIOLATION OF KRS 304.12-080

50.     Plaintiffs re-incorporate and re-allege by reference the allegations in Paragraphs 1 through 49 as if fully set forth herein.

51.     KRS 304.12-080 provides, in pertinent part, as follows:

> No insurer shall make or permit any unfair discrimination between individuals of the same class involving essentially the same hazards in the amount of premium, policy fees, or rates charged for any policy or contract of health insurance or in the benefits payable thereunder, or *in any of the terms and conditions of such contract, or in any other manner whatsoever,* except that in determining the class, consideration may be given to the nature of the risk, plan of insurance, the actual or expected expense of conducting the business or any other relevant factor.

52.     VISION's unlawful use of the OC Policy has resulted in discrimination between DR. GADDIE and GEC and other qualified VISION Doctors, requiring DR. GADDIE and GEC's patients to end the doctor-patient relationship, or use VISION's inferior out of network benefits in order to continue seeing DR. GADDIE and GEC for eye care health services.  This has caused DR. GADDIE and GEC damages that monetary compensation cannot adequately address.

## COUNT VI
## COLLATERAL ESTOPPEL

53.     Plaintiffs re-incorporate and re-allege by reference the allegations in Paragraphs 1 through 52 as if fully set forth herein.

54.     VISION has already litigated an issue pending in this case, under the same facts, in the Western District of Kentucky in the *Lynn* case.  A final decision was

rendered in that case the form of a permanent injunction, and the merits of the case were fully and comprehensively argued. See **Exhibit C**.

55. VISION cannot force DR. GADDIE and GEC into defending itself from the *same* unlawful attacks VISION has already launched against other VISION Doctors in the Commonwealth of Kentucky, as such litigation is prohibited by the doctrine of collateral estoppel/issue preclusion.

56. The Termination Letter presents no new facts, and indeed presents the same failed arguments that were already found to be unlawful in *Lynn*.

57. Because VISION has already litigated this issue to a final decision — it is bound by that decision, VISION cannot remove DR. GADDIE and/or GEC from the VISION network because such act is unlawful under the Kentucky Any Willing Provider Act, and VISION may not threaten to remove DR. GADDIE AND/OR GEC from the VISION network under the OC Policy, or force DR. GADDIE or GEC to provide any documents or other information related to Plaintiffs relationship with TECP, as it is not a relevant standard by which VISION can remove a VISION Doctor from the VISION network.

## COUNT VII
## PUNITIVE DAMAGES

58. Restates the allegations contained in Paragraphs 1 to 57.

59. The actions of VISION, as alleged above, were carried out willfully, wantonly, and maliciously, and with knowledge that these actions were unlawful.

60. Accordingly, plaintiffs are entitled to Punitive Damages in a substantial amount.

WHEREFORE, Plaintiffs request the following relief:

  A. A temporary restraining order forbidding VISION from enforcing the OC Policy against DR. GADDIE, GEC, and any VISION Doctors affiliated with GEC;

  B. A preliminary injunction, pending disposition on the merits, forbidding VISION from enforcing the OC Policy against DR. GADDIE, GEC, and any VISION Doctors affiliated with GEC;

  C. A trial by jury;

  D. Reasonable attorneys' fees;

  D. A permanent injunction forbidding VISION from enforcing the OC Policy against DR. GADDIE, GEC, and any VISION Doctors affiliated with GEC;

  E. A permanent injunction preventing VISION from enforcing the OC Policy within the Commonwealth of Kentucky;

  F. Compensatory and exemplary damages in an amount proven at trial;

  G. Any other relief the Court deems appropriate.

## JURY DEMAND

Petitioner respectfully demands TRIAL BY JURY on all issues presented in this Complaint that are triable as such, found in all Counts of this Complaint.

## DECLARATION

I, Dr. Ian Benjamin Gaddie, hereby declare under penalty of perjury, that I have read the foregoing Complaint and the information contained therein is true and accurate to the best of my belief and knowledge.

_____
Dr. Ian Benjamin Gaddie, O.D., individually and
As the sole member of Gaddie Eye Center, LLC

16

Date: November 21, 2017

Respectfully submitted,

/*s/ Donald L. Cox*/
Donald L. Cox
John D. Cox
Dylan R. Maschmeyer
LYNCH, COX, GILMAN & GOODMAN, P.S.C.
500 W. Jefferson St., Ste. 2100
Louisville, KY 40202
doncox@lynchcox.com
jcox@lynchcox.com
dmaschmeyer@lynchcox.com
(502) 589-4215

- and –

Nicholas T. Williams*
Illinois State Bar No. 6297966
2221 W. College Ave.
Normal, IL 61761
n.williams@ntwlawoffice.com
(618) 698-5625

*Attorneys for Plaintiffs*

*Motion for pro hac vice to be filed

## **CERTIFICATE OF SERVICE**

I, Donald L. Cox, do hereby certify that a true and correct copy of the foregoing will be filed with the Clerk of Court using the CM/ECF system, on this 21st day of November, 2017:

I further certify that a true and correct copy of the foregoing will be served upon the following by electronic mail and/or U.S. Mail, first class postage prepaid, this same day:

Bradley N. Garber
Deputy Counsel for VSP
**VSP Legal Department**
3333 Quality Dr.
Rancho Cordova, CA
brad.garber@vsp.com

Thomas Fessler
Chief Legal Officer and
General Counsel for VSP
**VSP Legal Department**
3333 Quality Dr.
Rancho Cordova, CA
ThomFe@vsp.com

Lisa Fields
Deputy Counsel for VSP
**VSP Legal Department**
3333 Quality Dr.
Rancho Cordova, CA
Lisa.Fields@vsp.com

VISION SERVICE PLAN
INSURANCE CO.
c/o Stuart Little Thompson,
Registered Agent
3333 Quality Drive
Rancho Cordova, CA 95670

*/s/ Donald L. Cox*
Donald L. Cox